The final argument of the morning is in Appeal No. 25-1967, the United States v. Christopher Lloyd. Okay. Mr. Leon, nice to see you. Mr. Sullivan, too, right? Yes. Okay. Thank you, Your Honor, and may it please the Court. This case is about a simple category of mismatch. Indiana's relevant statute makes it an attempted conspiracy, but Federal Generic Conspiracy under U.S.S.G. Section 4B.1.2 does not. The only sister circuit to address this issue under de novo review agreed so. We ask this Court to do the same, vacate, and remand for resentencing. The parties agreed that the dispositive question on appeal is whether Federal Generic Conspiracy Section 4B.1.2 rejects attempted conspiracy. To answer that question, this Court can review Federal law, foundational dictionaries, the majority rule in other U.S. jurisdictions, and the Model Penal Code. Whether you look at those sources in 1989 or 2023, you get the same answer. Conspiracy does not include attempted conspiracy. For 1989, it's undisputed between the parties that Federal law unanimously rejected attempted conspiracy. It's undisputed that foundational dictionaries like Brian Garner and Black's Law rejected attempted conspiracy. It's even undisputed that a majority of U.S. jurisdictions in 1989 rejected attempted conspiracy. The government has cited no case that I'm aware of using a minority state law definition over those sources to create the generic definition because that is the opposite of what is generic. Nothing material really changes by 2023. The government still does not dispute that Federal law unanimously rejected attempted conspiracy in 2023. It still does not cite any dictionary like Black's Law or Brian Garner to support its view. The only thing the government really changes for 2023 is its survey of the other U.S. jurisdictions and basically claims a lie in the being count. So Mr. Leon, so today in 2026, in your view, about how many states conspiracy crimes will be categorically ineligible to count as crimes of violence under the guidelines? Approximately 20. 20? Yes, approximately. Okay. Yes. And do you think that this interpretation of the guidelines that you are advancing right now, would that be grounds to file a 2255 in the future? I know we're here on a direct appeal. Well, in Pemberton, this court said the error was not clear. It said that the Federal generic definition of conspiracy was not obvious enough to reverse under plain error review. And so I think it would be hard, but not impossible. When you're dealing with 2255s and ineffective assistance, sometimes you have to look at the strategy of the council, and there are so many facts that could be related in those contexts. So I don't have a clear answer for the court, but my suggestion is probably no. So going back to 2023, Mr. Leon, can I pause you real quick? Sure. To your knowledge, has the U.S. Supreme Court spoken to this kind of baseline question about the measurement date or the measurement period? You know, you're talking about 1989 versus 2023, all that. Has the Supreme Court provided any guidance on that? I think in most Supreme Court cases, what you have is the court looking at the time of enactment, but the underlying assumption is that it was the last time the provision was substantively addressed. So for example, in Esquivel-Quintana, the court looked to the law in 1996, I believe it was. But that was the last time Congress had touched the word conspiracy. And so I think if Congress were to touch the word conspiracy, let's say in 2026, but just change it to conspires or conspiring, and then reshuffle some stuff, we would still look to 1996. You don't interpret statutes or guidelines based on the last time the ink was splashed on the page. The commission made clear here that it was not changing anything, it was just moving words to deal with an issue in other circuits. And in this circuit, the inchoate clause has always been a part of the text. This court interpreted crime of violence to include those exact words. So does that lead you to say you should really go back to 89 here? I mean, a few minutes ago I heard you say it doesn't matter whether you focus on 89 or Oath 2023. I think for the outcome of the case, we win regardless. But I do think the right interpretation here is to look to 1989. And I'll point out, although the Department of Justice is free to take inconsistent positions, there's a pending case in this circuit called United States v. Gammaz, and they're using my interpretation or my guideline that you look to the 1980s. And so I do think, you know, counsel can take whatever position he wants, but all he has is that the commission relocated some words. And at bottom, the Supreme Court has said over and over again, you don't put substantive change behind that unless the lawmaking authority says so. And the commission said the opposite here. So with federal law, the majority rule, and foundational dictionaries on our side in both time periods, we think Mr. Roy should win. I want to note that the model penal code did interpret conspiracy to include attempted conspiracy in the early 1960s when no U.S. jurisdiction had done so. But by the code's own concession, it was not describing what was a common generic conspiracy. It was creating a brand new definition. And so I don't think the model penal code has much weight or distinct weight. Did you say attempted conspiracy? Yes. So that is really what a unilateral conspiracy is. It's an attempt to conspire to commit robbery. One person. Okay. I got it. So it's a double inchoate crime, functionally. And the commission, if it wants to add a double inchoate crime, it certainly may. And the commission has had almost 10 years to reject the Ninth Circuit's interpretation in Brown and has not. Mr. Leon, are there any, can you point us to, are there any Supreme Court cases or cases from our court that consider, that try to figure out what the generic meaning of a crime is when the law is really like in flux, transitioning the way it has been on this precise issue for the last few decades? I don't think, I would just refute the premise a little bit. I don't think the law has been in flux. Okay, but just like pause and take the premise for a minute. Sure, sure. So I think Escobedo-Quintana is probably the best example. There, the court had many states defining the age of consent at different ages. And it took age 16 because 31 jurisdictions had done, had defined it that way. It also had one federal statute that it put much sway into. And so here we have 31 jurisdictions in 1989. We have at least 28 in 2023. And the government doesn't dispute that we have unanimous federal law. Since conspiracy became a part of American law on our side. So I think the court should just follow Escobedo-Quintana. I think it's very simple. In the end, I would ask the court not to become the first appellate federal court to interpret conspiracy to include attempted conspiracy. And I would ask the court not to create a circuit split. He would ask the court to vacate every man instead. If there are no further questions, I would like to reserve the rest of my time. Okay, very well. Thank you, Mr. Leon. Mr. Sullivan. Good morning, Your Honor. Morning. May it please the court. Brennan Sullivan on behalf of the United States. Indiana's conspiracy statute is a categorical match for generic conspiracy under the guidelines. So this court should affirm. Generic conspiracy under the guidelines includes both bilateral conspiracy and unilateral conspiracy. The relevant sources here, meaning state jurisdictions, scholarly sources, and the model penal code all favored the unilateral approach. Therefore, the defendant's conspiracy to commit robbery conviction fits. Judge Tableson, I'll start with your point. I believe that you asked about how many states would not count if you were to apply the appellant's 1989 provision. At least 20, but it would also undermine how states have actually shaped their laws since then. He points to Mississippi, for instance, which passed a statute in 2007 that said we're actually now following a unilateral approach. So even if states were to define conspiracy statutes differently, it would discount those changes and kind of undermine dual sovereignty in that respect. There's also the potential question of 2255s, as you brought up. I would think that there could be a potential argument for defendants to raise that challenge down the road to say, well, nobody ever asked about this time in question. It just could open the floodgates in that respect. Judge Scudder, I believe that the United States Supreme Court in Pugin and Esquivel-Quintana got closest to determining the time in question, not outright. But they both looked at the time of the amendment, which is 1996, in which they brought in the definition of what an aggravated felony was. We're asking the court to use the same interpretive philosophy here. The commission took the ANCOA clause from the commentary and put it in the text. The commentary has a different interpretive meaning. It is not the same as the text. By placing it in the text, it amended or brought in the definition of crime of violence in several circuits, but even in this circuit, how the circuit interprets commentary is that it's an authoritative interpretation of the guideline text, but it's not the text itself. There's not just a semantic difference. There's an analytic difference. For that reason, this court should look to the law as it stood in 2023. Mr. Sullivan, is it possible that the, I guess what I think of as the undercover officer issue, the unilateral nature of a conspiracy, is properly conceived of as a defense to a conspiracy charge that is recognized in some jurisdictions and not others? Potentially, Your Honor. I suppose that the generic elements of conspiracy themselves, just talk about whether the parties agree. Defendants have attempted in state courts, to my knowledge, to claim that, well, there was no agreement because it was somebody who didn't have the same intent on the other side. I believe the North Dakota Supreme Court might have addressed that precise point in claiming, well, actually, there is an agreement here instead, but there's just essentially no meeting of the minds as they word it. Does that answer your question? Does that answer your question? Yeah. It's a tricky situation because when you read even the language of, let's say, the model penal code, everyone agrees here, the model penal code was trying to capture unilateral conspiracies, and everyone agrees that federal law doesn't, but when you read the description of conspiracy in the model penal code, and you read the elements of conspiracy in federal law, neither of them jumps off the page as answering the question one way or the other. They just talk about agreements, really. It just got me thinking, would it be more conceptually clear to think of this issue as a defense that is recognized in some jurisdictions rather than others, instead of one of the elements of conspiracy to start with? I think that is a good way of framing it, considering many states have also adopted, I think it's section 5.04 of the model penal code, which is an actual defense provision that talks about if you conspire with somebody who, let's say, doesn't have, quote, criminal responsibility, it's still a valid conspiracy conviction. So in that respect, if you're doing just a categorical approach analysis, the unilateral conspiracy still fits. It's the same element. It's still the agreement, still between at least one or more persons, but the defense itself is sort of what changes. If the court were to take that track, I think that's how you would have to resolve the generic question. I would also just point out, Judge Tableson, just about cases where the law was in flux. I mean, Taylor really is the case where the law had changed dramatically, dramatically over a long period of time. Sure, they look to 1984 because that's when he passed the ACCA, but still, I mean, the law, the common law definition was very rigid on what a burglary could be, similar to how the conspiracy definition, at least under federal law, is very rigid about how it could be. Taylor is a case that just takes the law in flux, took it as it stood at the right analytic time, and said, no, a majority of criminal state codes, along with the model penal code, all favor this definition of conspiracy, or at least this is how we're supposed to do the analysis. I'll just point out to Brown, too, if I may. The briefing in Brown doesn't really address this question, and the Ninth Circuit didn't have it teed up in quite the same respect. Both parties there agreed that generic conspiracy was just the federal definition of conspiracy, and the party spent a significant amount of time reviewing whether Washington's conspiracy statute actually criminalized unilateral or bilateral conspiracy. So to the extent this court were to take a path, it's because the issue is teed up differently. Instead, what you have here is, at least by 1989, several states had started to amend their statutes to head in the model penal code's direction. At least 20 jurisdictions had adopted the model penal code's direction. Black's Law, in 1990, there is provision that the appellant cites at the beginning of that definition, talks about two or more persons. Right after that, quotes model penal code section 5.03. To the extent that you're looking, let's say back then, at a seminal resource about what conspiracy meant, Black's Law also has that provision in it, too. I'm happy to answer any more questions. If there are no other questions, Your Honors, thank you, and we ask that you affirm. Okay. Thank you, Mr. Sullivan. Back to you, Mr. Leon. Welcome to use your time. Thank you. A few points in response. Even if you look at the time of enactment here, under this court's precedent, it's 1989 because it interpreted the text, crime of violence, to include the word conspiracy. Second, Judge Tableson, you raised the defense point. The parties here have agreed that the dispositive question is whether a federal generic conspiracy includes or rejects attempted conspiracy. The government has conceded that it's an element, and so under the principle of party presentation, the court should not reach that. That would violate the adversarial system for the court to create a new theory that was conceded in the briefs. Third and last, the government talks about the Ninth Circuit's decision in Brown a little bit. The reason it wasn't disputed in Brown was because federal law is unanimous, and a majority of jurisdictions supported the defendant. There was no reason for the government to dispute it because, by definition, the minority view cannot be the generic view. So I think that actually supports us, and to the extent that the government wants to push the court towards the jurisdictional survey, I'll note two things. Escobel-Quintana said that's not required by the categorical approach, and second, this court's decision in Hadley did not look to jurisdictional surveys when it interpreted the generic definition of extortion. So it would be clear and consistent with precedent to just look at federal law, but we think it doesn't matter because we have everything on our side besides the model penal code from 1962, and by the codes on concession, it was not describing generic conspiracy. Thank you, Your Honors. We ask for you to vacate and remand. Okay, Mr. Leon, very well. Thanks to you. Mr. Sullivan, thanks to you as well. We will take the appeal under advisement, and that will conclude today's arguments. So the court will be in recess. Thank you.